ERMINIO E. PIETROMONACO and EMILIA R. PIETROMONACO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pietromonaco v. Commissioner
Docket No. 6870-89
United States Tax Court
T.C. Memo 1991-361; 1991 Tax Ct. Memo LEXIS 410; 62 T.C.M. (CCH) 330; T.C.M. (RIA) 91361; August 5, 1991, Filed *410 Decision will be entered under Rule 155. Bruce I. Hochman, for the petitioner. Mary Schewatz, for the respondent. PARR, Judge. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)[1]
Sec. 6653(a)(1)
Sec. 6653(a)(2)
1980
$ 13,394
$ 669.70
N/A
NONE
1981
18,099
N/A
$ 904.95
*
1982
13,915
N/A
695.75
*
The parties have conceded that petitioner, Erminio E. Pietromonaco (hereinafter, petitioner's husband or Mr. Pietromonaco) is liable for the deficiencies and additions to tax resulting from unreported *411 partnership income, other income, and self-employment income as set forth below: [2]
Year
Type of Income
Amount
1980
Partnership Income
$ 14,190 Other Income
22,576 Self-employment
22,764 $ 59,530 1981
Partnership Income
$ 13,687 Other Income
26,379 Self-employment
22,771 $ 62,837 1982
Partnership Income
$ 27,695 Other Income
7,109 Self-employment
41,755 $ 76,559 In addition, Mr. Pietromonaco is entitled to a $ 2,000 gambling loss deduction for tax year 1981 and a $ 2,000 exemption as set forth in the notice of deficiency for the tax year 1980. The sole issue for decision is whether Emilia Pietromonaco (hereinafter, petitioner) qualifies for innocent spouse relief under *412 section 6013(e). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated by this reference. Petitioner and her husband have been married 50 years. At the time this petition was filed, they resided in Arcadia, California. Petitioner was completely dependent upon her husband from 1941 until 1983. Prior to 1941, petitioner had obtained a high school diploma and had worked three weeks in a shoe store. In 1974, Mr. Pietromonaco, in partnership with his brother, purchased Le Monaco's Hairstyling Shop (hereinafter, Le Monaco's) in Westminster, California. In 1977, he bought out his brother by selling the family's beach house. He remained sole owner until 1979 when he sold a 25 percent interest to David Berru (hereinafter, Berru). Petitioner's husband was responsible for depositing the business gross receipts (in the form of cash, checks, and credit cards receipts) in the bank. Le Monaco's maintained two business accounts, one with Barclay's Bank and another with Bank of America. Petitioner and her husband maintained the following accounts at Security Pacific National Bank, Republic Federal *413 Savings, Home Federal Savings Bank, Bank of America, and Prudential Savings. The latter two accounts were in petitioner's name only. Petitioner was not involved in the business affairs of her husband. Occasionally, petitioner had dinner with Berru and visited the office when shopping at the mall in Westminster. Business was never discussed in her presence. Petitioner paid all household expenses from the account maintained at Security Pacific National Bank. All deposits into the account were made by petitioner's husband. In addition, petitioner was given $ 70 weekly for groceries and other miscellaneous items. Petitioners maintained a modest lifestyle, save the purchase of a Cadillac in 1979 from the proceeds of the sale of the 25 percent interest in Le Monaco's to Berru. Leisure activities consisted primarily of bowling and dining at cafeteria-type restaurants approximately twice a week. Occasionally, they attended horse races, but petitioner is uncertain how much her husband wagered. Mr. Pietromonaco paid cash for all the couple's expenditures. During 1980, 1981, and 1982, petitioners ventured to Las Vegas at least four times per year. While in Las Vegas they stayed *414 at a motel or hotel near the casinos where they gambled. Petitioner's husband would give her money to gamble, but would not gamble with her. She gambled at the quarter poker machines, he played dice. They would convene in the hotel room for meals. Mr. Pietromonaco cashed numerous checks from the corporate account while in Las Vegas during 1980-1982. He did not like to discuss his "luck" at the casino with petitioner. The only identifiable winnings and losses from Mr. Pietromonaco's gambling activities were $ 10,000 in winnings in 1981 and $ 2,000 in losses in 1981. Petitioner's only involvement in filing the income tax returns was to compile a list for the bookkeeper which contained all household expenses she believed had tax consequences, including real estate taxes. She would accompany her husband to deliver the list to the tax preparer, Mr. Wildrick. Petitioner did not know nor did she ask how much her husband earned during this time period. Except for questions about household expenses, all discussions were between Mr. Pietromonaco and Mr. Wildrick. Petitioner did not review the return, although she had opportunity to do so. In August 1986, Le Monaco's went out of business. *415 Consequently, in 1987 petitioners sold their residence for $ 285,665, and within one month purchased a town house for $ 147,300. In March 1989, petitioner's husband was diagnosed with Alzheimer's disease and has since been under the care of the Geriatric Neurobehavior and Alzheimer Center in Downey, California. Thus, on or around June 14, 1989, petitioner's husband transferred all of his interest in real property to petitioner. The joint bank accounts are now closed. Petitioner's husband has no assets left in his name. Petitioner is presently controlling all of the family finances. OPINION The sole issue for decision is whether Emilia Pietromonaco, petitioner, is entitled to innocent spouse relief under section 6013(e). A husband and wife who file a joint return are jointly and severally liable for the tax due. Sec. 6013(d)(3). However, the innocent spouse provision exempts a spouse from such liability if he or she can establish that: (1) A joint return has been made for the tax year in question; (2) the return contained a substantial understatement of tax attributed to grossly erroneous items of the other spouse; (3) she did not know of, and had no reason to know of, the *416 substantial understatement when she signed the return; and (4) after consideration of all the facts and circumstances, it would be inequitable to hold her liable for the deficiency in tax attributed to such substantial understatement. Sec. 6013(e)(1). Petitioner bears the burden of establishing that each of the requirements of section 6013(e) has been met. . Failure to prove any one of these requirements will prevent her from qualifying for relief under section 6013(e). . For tax years 1980, 1981, and 1982, petitioner and her husband filed joint returns. The parties have stipulated the deficiency determinations for those years and that the substantial understatements of tax reflected on the joint returns are attributable to grossly erroneous omissions of partnership income, other income, and self-employment income of petitioner's husband. Thus, petitioner has satisfied the requirements of section 6013(e)(1)(A) and (B). Contested, however, is whether petitioner knew or had reason to know of the understatement, and whether it is *417 equitable to hold her liable for the resulting deficiencies and additions to tax. Petitioner did not know of the understatement of income because she did not examine the tax return or discuss the matter with her husband. Nevertheless, she is not relieved of responsibility merely because she chose not to review the returns prior to signing them. See , T.C.M. (RIA) 90022, affd. F.2d (8th Cir. 1991); . A spouse cannot obtain benefit from section 6013(e) simply by turning a blind eye to, and preferring not to know of, facts fully disclosed on a tax return. . The question therefore is whether petitioner should have known of the substantial understatement. "A spouse has 'reason to know' of the substantial understatement if a reasonably prudent taxpayer in her position at the time she signed the return could be expected to know that the return contained the substantial understatement." *418 (Citations omitted). This case involves the omission of income, not deductions from income. Thus, the spouse claiming relief must be unaware of the circumstances which gave rise to that omission and not merely to the tax consequences of the facts. See , citing , affd. . See also . Price outlines the following factors to be considered when deciding whether the alleged innocent spouse had "reason to know" of the substantial understatement: (1) The spouse's level of education; (2) the spouse's involvement in the family's business and financial affairs; (3) the presence of expenditures that appear lavish or unusual when compared to the family's past levels of income, standard of living, and spending patterns; and (4) the culpable spouse's evasiveness and deceit concerning the couple's finances. . Petitioner's lifestyle remained constant during the years at issue. Petitioner's husband maintained *419 total control over his business affairs. He was evasive with regard to his gambling winnings and losses, but made no apparent objection to her examination of and participation in the filing of the joint tax return. Petitioner's involvement in the family's finances was limited to paying household expenses, including the mortgage on the house. Her husband made all deposits in the joint checking accounts and provided petitioner with a small allowance for food. Petitioner viewed the bank statements to ascertain if all checks written were paid, but paid no attention to account balances. At yearend, petitioner tabulated for the bookkeeper all household expenses which she believed had tax consequences and answered any questions about them. Although she was given the opportunity, she did not participate in any other aspect of preparing or reviewing the return because she felt that the bookkeeper would do a good job for her and her husband. A key factor in deciding whether a spouse should have known of substantial understatements of tax is the extent that family expenditures, about which the spouse had knowledge or awareness, exceed reported income. ; *420 citing . Here, petitioner was well aware of the amount of monthly and yearly expenditures for household items. A cursory review of the returns would have alerted petitioner that the amount of income reported could not have substantiated the amount of household expenses incurred as well as monies spent on leisure. [3] Given these facts, it was unreasonable not to inquire as to the amount of income earned in relation to expenses paid during the years in issue. Thus, in applying the factors set forth in , we conclude that a reasonably prudent person in the position of Emilia Pietromonaco at the time she signed the returns would be put on notice that the amounts of reported income on the tax returns could not reasonably support the family in their accustomed lifestyle.
*421 Accordingly, we hold that petitioner has failed to satisfy all of the requirements of section 6013(e) and is therefore liable for all deficiencies and additions. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code as amended and in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment attributable to negligence. ↩
2. The adjustments to partnership income are the direct result of cash receipts' being diverted by Erminio Pietromonaco for his personal use. Other income adjustments include deposits to petitioners' bank accounts where there were no identifiable source of revenue.↩
3. E.g., in 1980 reported income was $ 9,224. Deductible household expenses amounted to $ 10,111. This amount excludes payments for food (at least $ 70/week), gasoline, automobile repairs, clothes, entertainment, and miscellaneous expenses.↩